## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**EQT PRODUCTION COMPANY,**

      **Plaintiff,**

**v.**
                                     **CIVIL ACTION NO.**  2:16-cv-00290

**MATTHEW D. WENDER, in his official capacity**
**as President of the County Commission**
**of Fayette County, West Virginia**
**DENISE A. SCALPH, in her official capacity**
**as a Commissioner of the County Commission**
**of Fayette County, West Virginia, and**
**JOHN H. LOPEZ, in his official capacity**
**as a Commissioner of the County Commission**
**of Fayette County, West Virginia.**

      **Defendants,**

### VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

For its Complaint against Matthew D. Wender in his official capacity as President of the County Commission of Fayette County, West Virginia, Denise A. Scalph, in her official capacity as a Commissioner of the County Commission of Fayette County, West Virginia, and John H. Lopez, in his official capacity as a Commissioner of the County Commission of Fayette County, West Virginia (collectively the "Commission"), Plaintiff EQT Production Company ("EQT") states as follows:

### Introduction

1. EQT brings this action to enjoin enforcement of a patently illegal ordinance adopted by the Commission that purports to prohibit and criminalize otherwise lawful operations associated with production of oil and gas anywhere within the boundaries of Fayette County, West Virginia.

**Parties**

2. EQT is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.

3. EQT's high level officers direct, control, and coordinate EQT's activities from its headquarters in Pittsburgh, Pennsylvania.

4. EQT operates numerous oil and gas wells throughout the state of West Virginia, including approximately 200 wells in Fayette County. EQT's wells and other operations in Fayette County alone generate approximately $100,000 in annual tax revenue plus tens of thousands of dollars in royalty payments.

5. EQT also operates an underground injection control ("UIC") well in Fayette County pursuant to a permit issued by the West Virginia Department of Environmental Protection ("DEP") under a regulatory program approved by the U.S. Environmental Protection Agency under the federal Safe Drinking Water Act, 42 U.S.C.§ 300f, et seq. (UIC Permit No. UIC2D019510; hereafter, the "UIC Well").

6. EQT uses the UIC Well for the disposal of fluids brought to the surface in connection with its oil and gas production activities in Fayette County and nearby counties.

7. The value of EQT's property and activities in Fayette County, West Virginia that are adversely affected by the subject ordinance exceeds $75,000.

8. The Commission is a county commission created under W. Va. Code § 7-1-1 *et seq.* and is considered to be a citizen of West Virginia for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

**Jurisdiction and Venue**

9.  This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 as EQT and
    the Commission are citizens of different states and the amount of controversy exceeds
    $75,000.

10. This Court also has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331
    and 42 U.S.C. § 1983 as EQT is asserting claims that arise under federal law, and
    supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

11. EQT also seeks equitable relief and a declaratory judgment pursuant to 28 U.S.C. §§ 2201
    and 2202.

12. Venue is proper in this Court because the events giving rise to EQT's claims occurred in the
    Southern District of West Virginia, and Fayette County is located within the Southern
    District of West Virginia.

**Factual Background**

13. On or about January 12, 2016, the Commission adopted Ordinance No. 2015-001 entitled
    "Ordinance Banning the Storage, Disposal, or Use of Oil and Natural Gas Waste in Fayette
    County, West Virginia" ("Ordinance"). *See* Exhibit 1.

14. As detailed below, the scope of the Ordinance is so broad that it effectively prohibits anyone,
    including EQT, from continuing oil and gas production activities anywhere in Fayette
    County.  The Ordinance also prohibits EQT from operating the UIC Well, which has been
    properly permitted by DEP.

15. The Ordinance defines "natural gas waste" as follows:

    a.  any liquid or solid waste or its constituents that is generated as a result of
        natural gas extraction activities, which may consist of water, brine,
        chemicals, naturally occurring radioactive materials, heavy metals or other
        contaminants;

b.      leachate from solid wastes associated with natural gas extraction activities;

c.      any waste that is generated as a result of or in association with the underground storage of natural gas;

d.      any waste that is generated as a result of or in association with liquefied petroleum gas well storage operations; and

e.      any products or byproducts resulting from the treatment, processing, or modification of any of the above wastes.

16. The Ordinance defines "oil waste" as follows:

a.      any liquid or solid waste or its constituents that is generated as a result of oil extraction activities, which may consist of water, brine, chemicals, naturally occurring radioactive materials, heavy metals, or other contaminants;

b.      leachate from solid wastes associated with oil extraction activities; and

c.      any products or byproducts resulting from the treatment, processing, or modification of any of the above wastes.

17. All oil and gas wells produce some amount of "natural gas waste" or "oil waste" (as defined in the Ordinance) that has to be handled, processed, and stored as a routine aspect of operating such wells.

18. Permitted UIC wells, including "Class II" UIC wells as classified under the Safe Drinking Water Act, serve as an environmentally sound method for disposal of natural gas waste. The UIC Well is a properly permitted Class II UIC well that allows for the disposal (through injection) of natural gas waste in a manner that is protective of the environment and public health.

19. Section 1 of the Ordinance, titled "Prohibitions[,]" states as follows:

1.      It shall be unlawful for any individual or corporation, or any director, officer, owner, or manager of a corporation to use a corporation, to deposit, store, treat, inject or process waste water, produced water, frack water, brine or other materials, chemicals or by products that have been used in the extraction of gas onto or into the land, air or waters within Fayette County. This prohibition shall specifically apply to disposal injection wells.

2. The application of natural gas waste or oil waste, whether or not such waste has received approval for use by the Department of Environmental Protection (DEP) or any other regulatory body, on any road or real property located within Fayette County for any purpose is prohibited.

3. The introduction of natural gas waste or oil waste into any wastewater treatment facility within Fayette County is prohibited.

4. The introduction of natural gas waste or oil waste into any solid waste management facility within Fayette County is prohibited.

5. The sale, acquisition, storage, handling, treatment and/or processing of natural gas waste or oil waste within Fayette County is prohibited.

6. No permit, license, privilege or charter issued by any State or federal agency, Commission or Board to any person or any corporation operating under a State charter, or any director, officer, owner, or manager of a corporation operating under a State charter, which would violate the prohibitions of this Ordinance shall be deemed valid within Fayette County.

Ordinance § 1.

20. In short, the Ordinance purports to make it unlawful for anyone to "deposit, store, treat, inject or process" various fluids that meet the Ordinance's definition of "natural gas waste." Ordinance § 1, ¶1.

21. The Ordinance specifically purports to ban "disposal injection wells," which appears to be an attempt to reference UIC wells. Ordinance § 1, ¶1.

22. The Ordinance also purports to prohibit the "sale, acquisition, storage, handling, treatment and/or processing of natural gas waste or oil waste within Fayette County[.]" Ordinance § 1, ¶5. Because any production of oil and gas from a properly permitted well requires the handling and at least temporary storage of natural gas waste or oil waste, this provision prohibits the production of any oil and gas in Fayette County.

23. The Ordinance purports to nullify any state or federal permits, licenses, or other authorizations that would permit activities banned by the Ordinance, such as permits issued by DEP. Ordinance § 1, ¶6.

24. These prohibitions would make it unlawful for EQT to operate its oil and gas wells in Fayette County.

25. These prohibitions would make it unlawful for EQT to operate the UIC Well in Fayette County.

26. Ordinance § 1, ¶6 purports to nullify the DEP permit issued to EQT that authorizes the operation of the UIC Well.

27. Ordinance § 1, ¶6 purports to nullify any existing or future DEP "well work" permits that authorize wells for the production of oil and gas in Fayette County.

28. Section 3 of the Ordinance, titled "Enforcement[,]" states as follows:

   1. Any person, corporation, or other entity that violates any prohibition of this Ordinance may be guilty of a misdemeanor. A separate offense shall arise for each day or portion thereof in which a violation occurs and for each section of this Ordinance found to be violated.

   2. The Fayette County Commission may, at their discretion, also enforce this Ordinance through an action in equity, including but not limited to injunctive relief, brought in the Circuit Court or any court with jurisdiction. In such an action, the Fayette County Commission shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees.

   3. Any resident of Fayette County shall have the authority to enforce this Ordinance through an action in equity brought in the Circuit Court of Fayette County. In such an action, the resident shall be entitled to recover all costs of litigation, including, without limitation, expert and attorney's fees.

29. The Ordinance states that violation of its terms constitutes a crime in the form of a misdemeanor, and each day that a violation occurs shall be considered a separate offense. Ordinance § 3, ¶1. Moreover, each section of the Ordinance deemed violated shall be considered a separate offense, so actions in violation of more than one provision will be treated as separate offenses. *Id.*

30. The Ordinance states that the Commission may recover all costs of litigation associated with seeking to enforce the Ordinance regardless or whether the Commission prevails in such an enforcement action.

31. The Ordinance purports to create a private right of action (i.e. a "citizen suit") that allows any resident of Fayette County to commence a civil action in circuit court to enforce the Ordinance and recover all costs of litigation.

32. Read literally, EQT is purportedly subject to criminal prosecution under the Ordinance for each day that it continues to operate each of its oil and gas wells and the UIC Well in Fayette County.

33. EQT would be subject to civil enforcement action by either the Commission or a resident of Fayette County for each day it continues to operate each of its oil and gas wells and the UIC Well in Fayette County, including an assessment of the litigation costs associated with the enforcement action regardless of who prevails in such an enforcement action.

34. Section 4 of the Ordinance, titled "Penalties[,]" states as follows:

1. Any person who disposes of such natural gas or oil waste, as heretofore defined, is guilty of causing and maintaining a nuisance, a misdemeanor and, upon conviction thereof, shall be fined not less than one thousand ($1,000) and not more than five million ($5,000,000) and may be confined in the regional jail for not less than ninety (90) days nor more than one (1) year for each offense. Said fine shall be commensurate with the costs of remediation and abatement associated with said offense.

2. This ordinance shall apply to any and all actions occurring on or after the effective date of this ordinance. The County is empowered to issue "Cease and Desist" orders in case of any violation of the Prohibitions and Provisions stated above. It is further empowered to require remediation of any damage done to any land, road, building, aquifer, well, water course, air quality or other asset, be it public or private, within Fayette County.

3. Whether criminal or civil, a defendant found guilty or liable for violating this ordinance may be ordered to pay any costs of restitution or remediation of damages.

35. If convicted of violating the Ordinance, EQT and any "director, officer, owner, or manager" of EQT would be subject to a minimum of 90 days, and up to one year, of incarceration plus a fine of up to five million dollars ($5,000,000). Ordinance § 1, ¶1, § 4, ¶1.

36. The Ordinance allows the Commission to require remediation of any "damage" to public or private property as a result of violating the Ordinance.  The Ordinance does not define what constitutes "damage" to property. Ordinance § 4, ¶¶ 2 and 3.

### Count 1 – Preemption by the West Virginia Oil and Gas Act

37. EQT restates the allegations set forth above.

38. The West Virginia Oil and Gas Act, W. Va. Code §§ 22-6 through 22-10, *et seq*. ("Oil and Gas Act") establishes a comprehensive program for permitting and regulating the production of oil and gas in the State.

39. The West Virginia Legislature has vested the DEP Office of Oil and Gas with the authority to administer the Oil and Gas Act, and to promulgate regulations to implement the Oil and Gas Act.  W. Va. Code §§ 22-6-2(a); 22-6-2(c)(13).

40. The Oil and Gas Act declares that DEP "shall have the power and duty to . . . Perform all duties as the permit issuing authority for the state in all matters pertaining to the exploration, development, production, storage and recovery of this state's oil and gas[.]" W. Va. Code § 22-6-2(c)(12).

41. The Oil and Gas Act grants DEP the authority to issue permits to regulate the discharge of pollutants into waters of the State to ensure compliance with water quality standards and other environmental requirements.  W. Va. Code § 22-6-7.

42. DEP has promulgated comprehensive regulations governing all aspects of the exploration, development, production, storage and recovery of oil and gas. *See* 35 C.S.R. Series 1 through 8.

43. The Oil and Gas Act and associated regulations fully occupy the field of regulating production of oil and gas in West Virginia.

44. The Oil and Gas Act does not contain a "savings" provision that preserves the ability of local governments to regulate the exploration, development, production, storage and recovery of oil and gas.

45. By purporting to ban oil and gas production activities in Fayette County, the Ordinance expressly contravenes the provisions of the Oil and Gas Act that allow oil and gas to be produced from mineral resources in the State.

46. The Ordinance is preempted by the Oil and Gas Act and associated regulations.

### Count 2 – Preemption by the Federal Safe Drinking Water Act and West Virginia UIC Program

47. EQT restates the allegations set forth above.

48. The federal Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300f, *et seq.*, is a comprehensive regulatory program designed to protect drinking water sources.

49. The SDWA and associated regulations promulgated by the federal Environmental Protection Agency ("EPA") fully occupy the field of regulating drinking water sources.

50. The SDWA establishes a permitting program for the regulation of underground injection of fluid ("UIC Program").

51. State and local governments may only seek to regulate underground injection so long as doing so does not interfere with the UIC Program.

52. States may obtain authority from EPA to administer a UIC Program through state laws that are consistent with the federal UIC Program. 42 U.S.C. §§ 300h – 300h-8.

53. The Legislature has vested DEP with authority to administer a UIC Program under West Virginia law. *See* W. Va. Code § 22-11-4(a)(13).

54. DEP has obtained authority from EPA to administer a UIC Program.

55. DEP has promulgated comprehensive regulations approved by EPA to implement a UIC Program in West Virginia. *See* W. Va. C.S.R. § 47-13-1, *et seq.*

56. By purporting to ban UIC wells, the Ordinance expressly contravenes the provisions of the SDWA and DEP regulations that allow UIC wells, and thus improperly interferes with the UIC Program.

57. The Ordinance is preempted by the SDWA, West Virginia statute, and DEP legislative rules governing UIC wells.

### Count 3 – *Ultra Vires* Exercise of Ordinance Authority

58. EQT restates the allegations set forth above.

59. The Commission is a government entity created by statute and its powers are limited to those enumerated in the statute.

60. The Legislature has vested county commissions with authority to enact certain ordinances to eliminate hazards to the public health and to abate nuisances. W. Va. Code § 7-1-3kk.

61. County commissions do not, however, have the power to make a blanket declaration through an ordinance that certain lawful activities, not considered a nuisance at common law, constitute a *per se* nuisance anywhere in the County. *See Sharon Steel Corporation v. City of Fairmont*, 175 W. Va. 479, 334 S.E.2d 616 (1985); *Parker v. Fairmont*, 72 W. Va. 688, 690-

91, 79 S.E. 660, 661-62 (1913) ("Clearly the power granted is to abate what the law holds to be a nuisance, not to enact that any particular thing is a nuisance.").

62. The purported determination that the activities prohibited by the Ordinance represent hazards to public health and safety on a county-wide basis, everywhere and anywhere, is arbitrary, capricious, unreasonable, unfairly discriminatory, wholly without factual support, and bears no substantial relation to the public health, safety, morals, or general welfare.

63. The Commission has no rational basis to conclude that EQT's operation of its oil and gas wells and the UIC Well within the borders of Fayette County presents a hazard to public health and safety.

64. The Commission has no rational basis to conclude that EQT's operation of its oil and gas wells and the UIC Well within the borders of Fayette County constitute a public nuisance.

65. The Commission lacks the statutory authority to ban otherwise lawful activity from any location within Fayette County.

66. The Commission lacks the statutory authority to create a private right of action in favor of residents of Fayette County or to grant those residents the right to recover all costs of litigation associated with pursuing such a right of action.

67. The Commission lacks the statutory authority to nullify permits, licenses, or other authorizations issued by the federal or State government allowing EQT to engage in oil and gas production activities and operation of the UIC Well.

### Count 4 – Unconstitutional "Taking" in Violation the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983

68. EQT restates the allegations set forth above.

69. The Fifth Amendment of the United States Constitution states that "nor shall private property be taken for public use, without just compensation."

70. A government "taking" of private property can occur when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property.

71. The Ordinance does not seek to regulate oil and gas related operations or underground injection of oil and gas waste.  Rather, the Ordinance amounts to a blanket ban against oil and gas related operations as well as underground injection of oil and gas waste.

72. EQT's property in the form of producing oil and gas wells, related equipment, mineral rights to produce oil and gas, property rights to dispose of oil and natural gas development waste, and the UIC Well, has substantial economic value.

73. The Ordinance would effectively destroy the economic value of EQT's property by prohibiting EQT from further operation of its oil and gas wells and UIC Well.

74. The Ordinance amounts to a government "taking" of private property without just compensation in violation of the Fifth Amendment to the United States Constitution.

### Count 5 - Unconstitutional "Taking" in Violation of Article 3, § 9 of the West Virginia Constitution

75. EQT restates the allegations set forth above.

76. Article 3, § 9 of the West Virginia Constitution states that "[p]rivate property shall not be taken or damaged for public use, without just compensation."

77. The Ordinance does not seek to regulate oil and gas related operations or underground injection of oil and gas waste.  Rather, the Ordinance amounts to a blanket ban against oil and gas related operations as well as underground injection of oil and gas waste.

78. EQT's property in the form of producing oil and gas wells, related equipment, mineral rights to produce oil and gas, property rights to dispose of oil and natural gas development waste, and the UIC Well, has substantial economic value.

79. The Ordinance would effectively destroy the economic value of EQT's property by prohibiting EQT from further operation of its oil and gas wells and UIC Well.

80. The Ordinance amounts to a government "taking" of private property without adequate compensation in violation of Article 3, § 9 of the West Virginia Constitution.

### Count 6 – Unconstitutional Impairment of Contract in Violation of the United States Constitution Article 1, § 10 and 42 U.S.C. § 1983

81. EQT restates the allegations set forth above.

82. The Contracts Clause of the United States Constitution states in pertinent part that no state shall "pass any . . . Law impairing the Obligation of Contract . . . ." U.S. Const. Art. I, § 10, Cl. 1.

83. The Ordinance prohibits EQT from operating its oil and gas wells and the UIC Well.

84. If EQT is not permitted to operate its oil and gas wells and the UIC Well, it will be unable to realize the benefits of the contracts (i.e. leases) it has with the owners of the mineral estates of the oil and gas that it is permitted to produce pursuant to permits issued by the DEP.

85. The Ordinance constitutes a substantial impairment of EQT's contracts.

86. The Ordinance is not a legitimate exercise of the Commission's powers.

87. The Ordinance violates the Contracts Clause of the United States Constitution.

### Count 7 – Unconstitutional Impairment of Contract in Violation of Article 3, § 4 of the West Virginia Constitution

88. EQT restates the allegations set forth above.

89. The "Contracts Clause" of the West Virginia Constitution, Article 3, § 4, states in pertinent part that "no . . . law impairing the obligation of a contract[] shall be passed."

90. The Ordinance prohibits EQT from operating its oil and gas wells and the UIC Well.

91. If EQT is not permitted to operate its oil and gas wells and the UIC Well, it will be unable to realize the benefits of the contracts (i.e. leases) it has with the owners of the mineral estates of the oil and gas that it is permitted to produce pursuant to permits issued by the DEP.

92. The Ordinance violates the Contracts Clause of the West Virginia Constitution.

**Count 8 – Illegal Zoning Ordinance in Violation of W. Va. Code § 8A-7-1, et seq.**

93. EQT restates the allegations set forth above.

94. W. Va. Code § 8A-1-1, *et seq.* governs zoning ordinances promulgated by counties and municipalities.

95. "Zoning" is defined as "the division of a municipality or county into districts or zones which specify permitted and conditional uses and development standards for real property within the districts or zones." W. Va. Code § 8A-1-2(gg).

96. The Ordinance amounts to an attempt to specify uses of land that will not be permitted in Fayette County.

97. A county ordinance governing land use must be adopted pursuant to the procedures set forth in W. Va. Code § 8A-7-1, et seq.

98. Before enacting a county zoning ordinance, the proposed ordinance must be publicly advertised and the governing body must hold at least two public hearings, one during the day and one during the evening, to discuss the ordinance and give public notice of the ordinance and the public hearings as required by W. Va. Code § 8A-7-5.

99. The Commission did not provide the required public notice of the Ordinance and public hearings, and did not hold the required two public hearings before adopting the Ordinance.

100. A county zoning ordinance must allow legitimate land use somewhere in the county. A county zoning ordinance cannot prohibit legitimate land use anywhere in the county.

101.    Operating oil and gas wells and a duly permitted UIC well are legitimate land uses that the Ordinance prohibits anywhere in Fayette County.

102.    W. Va. Code § 8A-7-10(e) states that "[n]othing in this Chapter authorizes an ordinance, rule or regulation preventing, outside of urban areas, the complete use of natural resources by the owner."

103.    Only geographic areas of Fayette County within the limits of a municipality are "urban areas" within meaning of W. Va. Code § 8A-7-10(e).

104.    The Ordinance prevents the complete use of natural resources owned by EQT in Fayette County outside of urban areas.

105.    The Ordinance violates W. Va. Code § 8A-1-1, *et seq.*

### Count 9 - Injunctive Relief

106.    EQT restates the allegations set forth above.

107.    As of the passage of the Ordinance, EQT is at substantial risk of enforcement action by the Commission and "citizen suits" by residents of Fayette County who may seek to enforce the provisions of the Ordinance.

108.    EQT will suffer irreparable harm if enforcement of the ordinance is not enjoined.  The ordinance purports to grant the Commission authority to civilly and criminally prosecute those believed to be in violation of the Ordinance, to seek imposition of a fine up to $5,000,000, and to obtain injunctive relief prohibiting further violations of the Ordinance.

109.    The Commission will not be harmed if enforcement of the Ordinance is enjoined.  EQT operates its oil and gas wells and the UIC Well according to federal, state, and local requirements.  EQT's operation of these wells does not pose a hazard to the environment or public health, and does not constitute a public nuisance.

110.    EQT is likely to succeed on the merits for all of the reasons stated above.

111.    The public interest favors an injunction against enforcement of the Ordinance.  EQT and

oil and gas operators in a similar position as EQT should not be at risk of prosecution or

other enforcement action by the Commission or "citizen suits" by residents of such a patently

illegal ordinance.

WHEREFORE, for the reasons stated above, EQT requests an order granting the following

relief:

A. Enjoining the Commission from enforcing any provision of the Ordinance;

B. Declaring that the Ordinance is preempted by the Oil and Gas Act;

C. Declaring that the Ordinance exceeds the Commission's statutory authority;

D. Declaring that the Ordinance constitutes a regulatory "taking" within the meaning of the
Fifth Amendment of the United States Constitution and Article 3, § 9 of the West
Virginia Constitution;

E. Declaring that the Ordinance violates the "Contracts Clause" of Article I, §10 of the
United States Constitution and Article 3, § 4 of the West Virginia Constitution;

F. Declaring that the Ordinance is an illegal zoning ordinance in violation of W. Va. Code §
8A-7-1, *et seq.*;

G. Awarding EQT its attorney fees and costs associated with bringing this action pursuant to
42 U.S.C. § 1988;

H. Awarding any further relief the Court deems just.

**EQT Production Company**
**By Counsel**

*s/Timothy M. Miller*
Timothy M. Miller (W. Va. Bar No. 2564)
Christopher B. Power (W. Va. Bar No. 4286)

Matthew S. Casto (W. Va. Bar No. 8174)
Babst Calland Clements and Zomnir, P.C.
BB&T Square
300 Summers Street, Suite 1000
Charleston, WV  25301
Phone:  (681) 205-8888
Fax:   (681) 205-8814
tmiller@babstcalland.com
cpower@babstcalland.com
mcasto@babstcalland.com