IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

EQT PRODUCTION COMPANY,

    Plaintiff,

v.                                              CIVIL ACTION NO. 2:16-00290

MATTHEW D. WERNER, in his official capacity
as President of the County Commission
of Fayette County, West Virginia,
DENISE A. SCALPH, in her official capacity
as a Commissioner of the County Commission
of Fayette County, West Virginia, and
JOHN H. LOPEZ, in his official capacity
as a Commissioner of the County Commission
of Fayette County, West Virginia.

    Defendants,

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

In conjunction with its Verified Complaint for Declaratory and Injunctive Relief, Plaintiff EQT Production Company ("EQT") has filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). Pursuant to L. R. Civ. P. 7.1(a), this memorandum of law is submitted in support of the Motion.

**I.    Introduction and Factual Background.**

EQT is entitled to an injunction because it is subject to civil and criminal prosecution under an illegal ordinance adopted by the Fayette County Commission ("Commission") on January 12, 2016, Ordinance No. 2015-001 ("Ordinance"), that purports to outlaw otherwise lawful activities associated with production of oil and gas in Fayette County. As more fully set forth in EQT's Verified Complaint for Declaratory and Injunctive Relief ("Complaint"), EQT operates over 200 producing oil and gas wells and an underground injection control ("UIC")

{B2403109.3}

disposal well in Fayette County, West Virginia. All oil and gas wells produce some amount of "natural gas waste" or "oil waste" (as defined in the Ordinance) that has to be handled, processed, and stored as a routine aspect of operating such wells. EQT's operation of the oil and gas wells and the UIC well has purportedly been prohibited by the Ordinance.

EQT is subject to civil and criminal prosecution under the Ordinance for each day that it continues to operate each of its oil and gas wells and the UIC Well in Fayette County. EQT is also subject to potential "citizen suits" by residents Fayette County who are purportedly authorized to enforce the Ordinance by its own terms.

## II. Standard for Temporary Restraining Order and Preliminary Injunctive Relief.

Rule 65(b) of the Federal Rules of Civil Procedure authorizes this Court to issue a temporary restraining order when (1) facts set forth in a verified complaint "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and (2) "the movant's attorney certifies in writing any efforts to give notice and the reasons why it should not be required."

A plaintiff seeking injunctive relief must establish four factors:

(1) that he is likely to succeed on the merits;

(2) that he is likely to suffer irreparable harm in the absence of preliminary relief;

(3) that the balance of equities tips in his favor; and

(4) that an injunction is in the public interest.

*Tube City IMS, LLC v. Severstal US Holdings, LLC,* 2014 U.S. Dist. LEXIS 133277 (N.D. W. Va., September 23, 2014) citing *Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), quoting *Winter v. Natural Res. Def.*

*Council, Inc.,* 555 U.S. 7, 20 (2008). The Fourth Circuit declared the *Winter* test "governs the issuance of preliminary injunctions not only in the Fourth Circuit, but all federal courts." *Obama,* at 347. All four requirements must be satisfied. *Id.* The issuance of a preliminary injunction is committed to the sound discretion of the district court. *Tube City,* citing *Conservation Council of North Carolina v. Costanzo,* 505 F.2d 498, 502 (4th Cir. 1974).

### III.   Argument.

EQT has satisfied all the elements required for issuance of a temporary restraining order and preliminary injunction. As more fully discussed below, the facts set forth in the Complaint clearly show that EQT will likely suffer immediate and irreparable injury, loss, or damage before the Commission can be heard in opposition. The undersigned hereby certifies that he has attempted to provide notice via telephone and fax of the Complaint and the Motion to the Fayette County Prosecuting Attorney, Larry Harrah, who also serves as the County Attorney for the Fayette County Commission.

#### A.    EQT is Likely to Succeed on the Merits.

EQT's Complaint sets forth 8 separate causes of action as well as a request for injunctive relief. EQT is likely to prevail on its causes of action.

##### 1.   The Ordinance is Preempted by West Virginia Oil and Gas Act (Count 1).

The West Virginia Oil and Gas Act, W. Va. Code §§ 22-6 through 22-10, et seq. ("Oil and Gas Act") establishes a comprehensive program for permitting and regulating the production of oil and gas in the State. The West Virginia Legislature has vested the DEP Office of Oil and Gas with the authority to administer the Oil and Gas Act, and to promulgate regulations to implement the Oil and Gas Act. W. Va. Code §§ 22-6-2(a); 22-6-2(c)(13). DEP has

promulgated comprehensive regulations governing all aspects of the exploration, development, production, storage and recovery of oil and gas. See 35 C.S.R. Series 1 through 8.

The Oil and Gas Act declares that DEP "shall have the power and duty to . . . Perform all duties as the permit issuing authority for the state in all matters pertaining to the exploration, development, production, storage and recovery of this state's oil and gas[.]" W. Va. Code § 22-6-2(c)(12). The Oil and Gas Act grants DEP the authority to issue permits to regulate the discharge of pollutants into waters of the State to ensure compliance with water quality standards and other environmental requirements. W. Va. Code § 22-6-7. The Oil and Gas Act does not contain a "savings" provision that preserves the ability of local governments to regulate the exploration, development, production, storage and recovery of oil and gas.

The Ordinance is preempted by the Oil and Gas Act and associated regulations because those provisions fully occupy the field of regulating production of oil and gas in West Virginia. "When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syl. Pt. 2, *American Tower Corp. v. Common Council*, 210 W. Va. 345, 557 S.E.2d 752 (2001). The Circuit Court of Monongalia County reached this same conclusion when faced with an ordinance adopted by the City of Morgantown purporting to prohibit hydraulic fracturing of oil and gas wells within city limits or within one mile outside of city limits. *See Northeast Natural Energy, LLC v. The City of Morgantown*, 2011 WL 3584376 (No. 11-C-411, August 12, 2011) ("*NNE*," attached as Exhibit A to the Motion). After evaluating the scope of the Oil and Gas Act, the Circuit Court in *NNE* concluded that the "provisions clearly indicate that this area of law is exclusively in the hands of the WVDEP. No exception is carved out for any locality or municipality. In fact throughout the regulation it is explicit that all authority lies solely within

the hands of the Director [of DEP]." *Id.* at *4. Accordingly, the Circuit Court struck down the Ordinance as preempted by the Oil and Gas Act. *Id.* at *4, 5. The City of Morgantown did not appeal.

The Commission's Ordinance is no less preempted by the Oil and Gas Act. By purporting to ban oil and gas production activities in Fayette County, the Ordinance expressly contravenes the provisions of the Oil and Gas Act that allow oil and gas to be produced from mineral resources in the State. Therefore, EQT is likely to prevail on Count 1.

2.  **The Ordinance is Preempted by the Federal Safe Drinking Water Act and West Virginia's UIC Program (Count 2).**

In addition to prohibiting operation of producing oil and gas wells, the Ordinance also seeks to ban UIC wells. "This prohibition shall specifically apply to disposal injection wells." Ordinance § 1, ¶1. To the extent the Ordinance purports to outlaw UIC wells in Fayette County, it is preempted by the federal Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300f, *et seq.*, and DEP's approved regulatory program that implements the UIC provisions of the SDWA.

The SDWA is a comprehensive regulatory program designed to protect drinking water sources. The SDWA fully occupies the field of regulating public drinking water and therefore preempts conflicting state or local regulation of drinking water. "We have little hesitation in concluding that Congress occupied the field of public drinking water regulation with its enactment of the SDWA." *Matoon v. City of Pittsfield*, 980 F.2d 1, 4 (1st Cir. 1992). "Therefore, in the field of public drinking water regulation, state regulation is preempted by the federal statute." *Bath Petroleum Storage, Inc. v. Sovas*, 309 F. Supp.2d 357, 366 (N.D. N.Y. 2004).

The SDWA establishes a permitting program for the regulation of underground injection of fluid ("UIC Program"). 42 U.S.C. § 300h. States may obtain authority from EPA to administer a UIC Program through state laws that are consistent with the federal UIC Program.

42 U.S.C. §§ 300h – 300h-8. The Legislature has vested DEP with authority to administer a UIC Program under West Virginia law. See W. Va. Code § 22-11-4(a)(13). DEP has obtained authority from EPA to administer a UIC Program, and has promulgated comprehensive regulations approved by EPA to implement a UIC Program in West Virginia. See W. Va. C.S.R. § 47-13-1, *et seq.*

The SDWA contains a "savings clause" that preserves a limited ability of state and local governments to regulate drinking water, which states as follows:

> Nothing in this title [42 USCS §§ 300f et seq.] shall diminish any authority of a State or political subdivision to adopt or enforce any law or regulation respecting drinking water regulations or public water systems, but no such law or regulation shall relieve any person of any requirement otherwise applicable under this title [42 USCS §§ 300f et seq.].

42 U.S.C. § 300g-3(e). This provision does not, however, mean that state and local governments have plenary authority to enact laws that conflict with the SDWA or the UIC program. "The Court interprets this savings clause to reinforce that Congress intended that states retain authority respecting underground injection so long as it does not impinge on the UIC program administered by the EPA." *Bath Petroleum Storage, Inc. v. Sovas*, 309 F. Supp.2d 357, 367 - 368 (N.D. N.Y. 2004). In other words, state and local governments may only seek to regulate underground injection so long as doing so does not interfere with the UIC Program. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 477, 109 S. Ct. 1248, 1255 (1989) (recognizing that state law is preempted "to the extent that it actually conflicts with federal law -- that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (citations omitted)).

The Ordinance does not seek supplement or compliment the provisions of the SDWA or DEP's UIC program. Nor does the ordinance seek to regulate activities outside the field of the

SDWA or the UIC program. Rather, the express purpose of the Ordinance is to interfere with the UIC program. It purports to prohibit the very activities authorized by the SDWA – the permitting and operation of UIC wells. By purporting to ban UIC wells, the Ordinance expressly contravenes the provisions of the SDWA and DEP regulations that allow UIC wells, and thus improperly interferes with the UIC Program. The Ordinance is therefore preempted by the SDWA, the West Virginia statute authorizing DEP to administer a UIC program, and the DEP legislative rules governing UIC wells.

### 3. The Ordinance Exceeds the Statutory Authority Granted to the Commission (Count 3).

The Commission is a government entity created by statute and its powers are limited to those enumerated in the statute. *Butler v. Tucker*, 187 W. Va. 145, 150, 416 S.E.2d 262, 267 (1991). The Legislature has vested county commissions with authority to enact certain ordinances to eliminate hazards to the public health and to abate nuisances. W. Va. Code § 7-1-3kk. County commissions do not, however, have the power to make a blanket declaration through an ordinance that certain lawful activities, not considered a nuisance at common law, constitute a *per se* nuisance anywhere in the County. *See Sharon Steel Corporation v. City of Fairmont*, 175 W. Va. 479, 334 S.E.2d 616 (1985); *Parker v. Fairmont*, 72 W. Va. 688, 690-91, 79 S.E. 660, 661-62 (1913) ("Clearly the power granted is to abate what the law holds to be a nuisance, not to enact that any particular thing is a nuisance."). By declaring that various activities associated with production of oil and gas or UIC wells that dispose of natural gas waste constitute *per se* nuisances, without any factual findings with respect to any particular oil and gas well or UIC well, the Commission has exceeded its authority under W. Va. Code § 7-1-3kk.

County commissions also lack the authority to enact ordinances that are arbitrary, capricious, unreasonable, unfairly discriminatory, wholly without factual support, or bear no

substantial relation to the public health, safety, morals, or general welfare. *See Prete v. City of Morgantown*, 193 W. Va. 417, 419, 456 S.E.2d 498, 500 (1995). The Ordinance recites a number of broad and sweeping "findings" that express nothing more than generalizations about "natural gas waste" and its purported danger to the citizens. The Ordinance does not identify any particular location, circumstance, or operation where activities associated with oil and gas production or UIC wells have actually created a nuisance condition anywhere in Fayette County. Likewise, the Ordinance identifies no rational basis to conclude that EQT's operation of its oil and gas wells and the UIC Well within the borders of Fayette County presents a hazard to public health and safety or constitute a nuisance. Therefore, the ordinance is arbitrary, capricious, unreasonable, unfairly discriminatory, wholly without factual support, or bears no substantial relation to the public health, safety, morals, or general welfare.

In addition to being beyond the powers granted by the Legislature, a county government must authorize all legitimate uses of property as permissible somewhere within county borders. That is because property owners have a constitutional right to protect and enjoy their property. *See* West Virginia Constitution Article I, § 3. While a local government may impose reasonable restrictions on property use, the government lacks the statutory authority to ban otherwise lawful activity from every location within Fayette County. "The constitutionality of a zoning ordinance which totally prohibits legitimate uses or fails to provide for such uses anywhere within the municipality should be regarded with particular circumspection." *Beaver Gasoline Co. v. Osborne Borough*, 285 A.2d 501, 503 – 504 (Pa. 1971). Production of oil and gas and disposal of wastes in UIC wells are legitimate and authorized land uses that the Commission cannot prohibit everywhere in the County. In other words, assuming *arguendo* that the Commission

may impose certain reasonable restrictions on activities related to oil and gas production and UIC wells, the Commission cannot impose an outright ban on such activities.

The Commission also lacks the statutory authority to create a private right of action in favor of residents of Fayette County or to grant those residents the right to recover all costs of litigation associated with pursuing such a right of action. Nothing in Chapter 7 of the West Virginia Code, much less W. Va. Code § 7-1-3kk, vests county commissions with the authority to create a private right of action for citizens to commence a civil action to enforce an ordinance.

Lastly, the Commission lacks the statutory authority to nullify permits, licenses, or other authorizations issued by the federal or State government allowing EQT to engage in oil and gas production activities and operation of the UIC Well. The Ordinance states in pertinent part as follows:

> No permit, license, privilege or charter issued by any State or federal agency, Commission or Board to any person or any corporation operating under a State charter, or any director, officer, owner, or manager of a corporation operating under a State charter, which would violate the prohibitions of this Ordinance shall be deemed valid within Fayette County.

Ordinance § 1, ¶6.

In other words, the Ordinance declares that the Commission will not recognize the validity of a permit issued for operation of a UIC well or other "permit, license, privilege or charter" issued by the State or federal government. Needless to say, nothing in Chapter 7 of the West Virginia Code grants the Commission the right to essentially nullify a State or federal permit. Just this past October, a federal court in Pennsylvania struck down a similar local ordinance that purported to nullify state and federal permits associated with oil and gas production. *See Pennsylvania General Energy Company, LLC v. Grant Township*, No. 14-209, 2015 U.S. Dist. LEXIS 139921, at *20-22 (W.D. Pa. Oct. 14, 2015) (Attached as Exhibit B to the Motion) ("There is no state authority expressly granting a municipal government or its people the

authority to regulate the depositing of waste from oil and gas wells or to invalidate permits granted by the state or federal government. Any provision enacted without underlying legislative authority is invalid and unenforceable.") Like the local government in Pennsylvania, the Commission lacks the statutory authority to nullify or otherwise disregard State or federal permits for oil and gas related activities.

      **4.     The Ordinance Constitutes a Regulatory "Taking" in Violation of the United States Constitution and West Virginia Constitution (Counts 4 and 5).**

The Fifth Amendment of the United States Constitution states that "nor shall private property be taken for public use, without just compensation." Article 3, § 9 of the West Virginia Constitution contains a similar provision providing that "[p]rivate property shall not be taken or damaged for public use, without just compensation." "This constitutional protection 'is not restricted to physical invasions, occupations, or removals of property.'" *Adams v. Village of Wesley Chapel*, 259 Fed. Appx. 545, 548 – 549 (4th Cir. 2007) (unpublished) (quoting *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178, 190 (1st Cir. 1999)). A government "taking" of private property can occur when the value or usefulness of private property is diminished by a regulatory action that does not involve a physical occupation of the property. *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 684 (9th Cir. 1993). "It may occur as a result of 'a radical curtailment of a landowner's freedom to make use of or ability to derive income from his land,' even if the government does not physically intrude upon, or acquire a legal interest in, the property." *Adams v. Village of Wesley Chapel*, 259 Fed. Appx. 545, 548 – 549 (4th Cir. 2007) (unpublished) (quoting *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 14, (1984)).

The Supreme Court has established a three-part test to determine whether a regulatory taking has occurred. "Under that test, when a regulation such as a zoning ordinance causes substantial economic harm but does not deprive the landowner's property of all economic value, whether a taking occurred depends on [1] 'the regulation's economic effect on the landowner, [2] the extent to which the regulation interferes with reasonable investment-backed expectations, and [3] the character of the government action.'" *Adams v. Village of Wesley Chapel*, 259 Fed. Appx. 545, 548 – 549 (4th Cir. 2007) (unpublished) (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)).

The Ordinance clearly constitutes a regulatory taking under this test. First, the effect of the Ordinance on EQT is devastating. The Ordinance does not seek to regulate oil and gas related operations or underground injection of oil and gas waste. Rather, the Ordinance amounts to a blanket ban against oil and gas related operations as well as underground injection of oil and gas waste. EQT's property in the form of producing oil and gas wells, related equipment, mineral rights to produce oil and gas, property rights to dispose of oil and natural gas development waste, and the UIC Well, has substantial economic value. The Ordinance would effectively destroy the economic value of EQT's property by prohibiting EQT from further operation of its oil and gas wells and UIC Well. It is difficult to imagine a more "radical curtailment of a landowner's freedom to make use of or ability to derive income from his land[.]" *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 14, (1984).

Second, the Ordinance substantially interferes with EQT's reasonable investment-backed expectations. EQT's primary business is the production and sale of oil and gas. The Ordinance purports to prohibit EQT from engaging in its normal and otherwise lawful business activities in Fayette County, and thus deprives EQT of the ability to use its property for economic gain.

Third, the character of the Ordinance constitutes a taking. The Ordinance is not a general zoning ordinance that imposes limited restrictions on certain activities in certain areas of the county. Rather, the Ordinance purports to outlaw otherwise lawful, permitted activity anywhere and everywhere within the county's borders.

### 5. The Ordinance Violates the "Contracts Clause" of the United States Constitution and West Virginia Constitution (Counts 6 and 7).

The Contracts Clause of the United States Constitution states in pertinent part that no state shall "pass any . . . Law impairing the Obligation of Contract . . . ." U.S. Const. Art. I, § 10, Cl. 1. Article 3, § 4 of the West Virginia Constitution contains a similar provision stating that "no . . . law impairing the obligation of a contract[] shall be passed." The Supreme Court has prescribed a three-part test to determine whether government action constitutes a violation of the "Contracts Clause." "In reviewing an alleged Contract Clause violation, we ask: (1) whether there has been an impairment of a contract; (2) whether the state law has operated as a 'substantial impairment of a contractual relationship'; and (3) if there has been a substantial impairment, whether the impairment is permissible because it is 'reasonable and necessary to serve an important public purpose.'" *Cherry v. Mayor & Balt. City*, 762 F.3d 366, 371 (4th Cir. 2014). "The severity of an impairment of contractual obligations can be measured by the factors that reflect the high value the Framers placed on the protection of private contracts. Contracts enable individuals to order their personal and business affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 245, (1978).

The Ordinance satisfies all three elements necessary to demonstrate a violation of the Contracts Clause. First, the Ordinance impairs EQT's leases with mineral owners for production of oil and gas by prohibiting EQT from operating its oil and gas wells and the UIC Well. The Ordinance also impairs EQT's contracts with customers who purchase oil and gas produced by the wells in Fayette County by preventing EQT from producing oil and gas for delivery. Second, the impairment is substantial. The Ordinance does not merely curtail or impose additional restrictions on the production of oil and gas or operation of a UIC well. The Ordinance is an outright ban on these operations. EQT has entered into contracts for the production of oil and gas (and payment of royalties on such production) based on the reasonable presumption that it could perform its obligations under those contracts, which the Ordinance would prohibit. Third, the Ordinance is not necessary to serve an important public purpose. As explained above, the Ordinance is vastly overbroad and not limited to any particular circumstance, location, or operation that the Commission has determined to present an acute threat to public health.

### 6. The Ordinance constitutes an Illegal Zoning Ordinance (Count 8).

W. Va. Code § 8A-1-1, *et seq.* governs zoning ordinances promulgated by counties and municipalities. "Zoning" is defined as "the division of a municipality or county into districts or zones which specify permitted and conditional uses and development standards for real property within the districts or zones." W. Va. Code § 8A-1-2(gg). Although not designated as a zoning ordinance, the Ordinance constitutes an attempt to specify uses of land that will not be permitted in Fayette County.

A county ordinance governing land use must be adopted pursuant to the procedures set forth in W. Va. Code § 8A-7-1, *et seq.* Before enacting a county zoning ordinance, the proposed

ordinance must be publicly advertised and the governing body must hold at least two public hearings, one during the day and one during the evening, to discuss the ordinance and give public notice of the ordinance and the public hearings as required by W. Va. Code § 8A-7-5.

Upon information and belief, the Commission did not provide the required public notice of the Ordinance (identifying it as a zoning ordinance) and public hearings required by W.Va. Code § 8A-7-5. It also did not hold the required two public hearings, identifying the Ordinance as a zoning ordinance, before adopting it.

In addition, W. Va. Code § 8A-7-10(e) states that "[n]othing in this Chapter authorizes an ordinance, rule or regulation preventing, outside of urban areas, the complete use of natural resources by the owner." Only geographic areas of Fayette County within the limits of a municipality are "urban areas" within meaning of W. Va. Code § 8A-7-10(e). The Ordinance prevents the complete use of natural resources owned by EQT in Fayette County outside of urban areas. The Ordinance therefore violates W. Va. Code § 8A-7-10(e), *et seq*.

### B. EQT is Likely to Suffer Irreparable Harm in the Absence of Injunctive Relief.

In order to satisfy the irreparable harm standard, EQT need only show "that injury is certain, great, actual, and not theoretical." *Harper v. Blagg*, 2014 U.S. LEXIS 104042 (S.D. W.Va. May 21, 2014). EQT will suffer immediate irreparable harm if enforcement of the ordinance is not enjoined. The ordinance purports to grant the Commission authority to civilly and criminally prosecute those believed to be in violation of the Ordinance, to seek imposition of a fine up to $5,000,000, and to obtain injunctive relief prohibiting further violations of the Ordinance. EQT operates over 200 producing oil and gas wells and a UIC well in Fayette County. As a result of these otherwise lawful activities, EQT is at substantial risk of

enforcement action by the Commission and "citizen suits" by residents of Fayette County who may seek to enforce the provisions of the Ordinance. Moreover, to have to shut down these wells would cause EQT to incur substantial expense.

### C. The Balance of Equities Tips in EQT's Favor.

When weighing the parties' respective injuries and balancing the equities to determine whether a preliminary injunction should be issued, the court should consider: 1) the relative importance of the rights asserted and the act sought to be enjoined; 2) the preservation of the *status quo*; and 3) the balancing of damage and convenience generally. *Sinclair Refining Co. v. Midland Oil Co.*, 55 F.2d 42, 45 (4th Cir. 1932). As noted above, EQT will suffer irreparable harm if enforcement of the Ordinance is not enjoined. By contrast, the Commission will not be harmed if enforcement of the Ordinance is enjoined. EQT operates its oil and gas wells and the UIC Well according to federal, state, and local requirements. EQT's operation of these wells does not pose a hazard to the environment or public health, and does not constitute a public nuisance. The Commission has not identified any particular oil and gas related operation by EQT that poses a hazard to the environment or public health.

### D. An Injunction is in the Public Interest.

The public interest favors an injunction against enforcement of the Ordinance. EQT and oil and gas operators in a similar position as EQT should not be at risk of prosecution or other enforcement action by the Commission or "citizen suits" by residents of such a patently illegal ordinance.

## IV. Conclusion.

For all the reasons stated above, EQT has satisfied each and every element required to obtain an injunction against enforcement of the illegal Ordinance adopted by the Commission.

EQT Production Company
By Counsel


/s/ Timothy M. Miller
Timothy M. Miller (W. Va. Bar No. 2564)
Christopher B. Power (W. Va. Bar No. 4286)
Matthew S. Casto (W.Va. Bar No. 8174)
Babst Calland Clements and Zomnir, P.C.
BB&T Square
300 Summers Street, Suite 1000
Charleston, WV 25301
Phone: (681) 205-8888
Fax: (681) 205-8814
tmiller@babstcalland.com
cpower@babstcalland.com
mcasto@babstcalland.com